# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

ALONZO A BALDWIN,        )   CIVIL ACTION NO. 9:10-1115-RMG-BM
          #209021,      )
                              )
          Petitioner,     )
                              )
v.                       )   **REPORT AND RECOMMENDATION**
                              )
                              )
MICHAEL MCCALL,      )
                              )
          Respondent.   )
_____)

        Petitioner, an inmate with the South Carolina Department of Corrections, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition was filed pro se on April 28, 2010.[1]

        The Respondent filed a return and motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on August 25, 2010. As the Petitioner is proceeding pro se, a Roseboro order was entered by the Court on August 27, 2010, advising Petitioner of the importance of a motion for summary judgment and of the necessity for him to file an adequate response. Petitioner was specifically advised that if he failed to respond adequately, the Respondent's motion may be granted, thereby ending his case. Petitioner thereafter filed a memorandum in opposition to summary judgment on October 1, 2010. This matter is now before the Court for disposition.[2]

---

[1]Filing date per Houston v. Lack, 487 U.S. 266, 270-276 (1988)[Petition received in prison mail room on April 28, 2010].

[2]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(c) and (e), D.S.C. The Respondent has filed a motion for summary judgment. As (continued...)



## Procedural History

Petitioner was indicted in the November 2005 term of the Greenville County Grand Jury for first degree burglary [Indictment No. 05-GS-23-9233], possession of a weapon during the commission of a violent crime [Indictment No. 05-GS-23-9233], pointing and presenting a firearm [Indictment No. 05-GS-23-9234], discharging a firearm into a dwelling [Indictment No. 05-GS-9235], and assault and battery of a high and aggravated nature ("ABHAN")[Indictment No. 05-GS-23-9236]. (R.pp. 181-188). Subsequently, at the February 2006 term, the Greenville County Grand Jury also indicted Petitioner for criminal domestic violence of a high and aggravated nature [Indictment No. 06-GS-23-0948]. (R.pp. 189-190). Petitioner also waived presentment on a charge for criminal domestic violence ("CDV")[Indictment No. 06-GS-23-3613] [Not True Billed]. (R.pp. 6-7, 179-180).

Petitioner was represented by W. Richard James, Esquire, and Max B. Singleton, Esquire, and on May 17, 2006, pled guilty to these charges. <u>See</u> (R.pp. 1-49).[3] Petitioner was sentenced to concurrent sentences of twenty (20) years for first-degree burglary, five (5) years for possession of a weapon during the commission of a violent crime, five (5) years for pointing and presenting a firearm, ten (10) years for discharging a firearm into a dwelling, ten (10) years for ABHAN, thirty (30) days for CDV, first offense, and one (1) year for CDV, second offense. (R.p. 51).[4] Petitioner did not appeal his convictions and/or sentences.

---

[2](...continued)
this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[3]Only Mr. Singleton was present at the plea proceedings.

[4]According to Petitioner's PCR application, a motion to withdraw guilty plea and/or in the alternative motion to reconsider sentence was filed by Attorney Lawrence Crane, which presumably
(continued...)



Petitioner then filed a <u>pro se</u> Application for Post Conviction Relief ("APCR") in state circuit court on May 9, 2007. <u>Baldwin v. State of South Carolina</u>, No. 2007-CP-23-2998. (R.pp. 53-56). Petitioner raised the following issues in his APCR:

**Ground One:** Ineffective assistance of plea counsel:

a. Petitioner was not advised or was improperly advised regarding plea offers made to Petitioner's attorney.

b. Elements of offenses and possible sentences were not discussed with Petitioner.

c. Attorney at plea was not properly prepared to proceed, had not discussed case with Petitioner, had not advised Petitioner of possible sentences, had not discussed Petitioner's rights with Petitioner relative to a guilty plea or trial, and never discussed prior offers with Petitioner.

d. The plea attorney was without sufficient knowledge of case to represent Petitioner.

(R.p. 158)[5].

Petitioner was represented in his APCR by Lawrence W. Crane, Esquire, and an evidentiary hearing was held on November 15, 2007. (R.pp. 62-155). On December 27, 2007, the PCR Judge entered a written order denying Petitioner's APCR in its entirety. (R.pp. 157-165).

Petitioner appealed the denial of his APCR, and was represented in his appeal by M. Celia Robinson, Appellate Defender with the South Carolina Commission on Indigent Defense, who raised the following issue:

Did the PCR judge err in denying relief where Petitioner was prejudiced and the result of the proceeding was affected by his attorneys' deficient performance in that his counsel failed to investigate the case, failed to timely seek discovery or to prepare for

---

[4](...continued)
was denied (R.p. 56). There is no copy of this filing in the Record.

[5]The record does not contain the page of the PCR application with the issues listed. <u>See</u> (R.pp. 54-55). However, the PCR judge recites the issues in his order. (R.p. 158).

3



trial, failed to explain to Petitioner the elements or the possible sentences for the charges he was facing, failed to advise Petitioner that his counter-offer was rejected by the assistant solicitor, failed to advise Petitioner that the State's offer to drop the charge of first-degree burglary was a good offer and why, and failed to realize themselves or warn Petitioner that there was a deadline for him to accept the State's plea offer?

<u>See</u> Petition, p. 2.

After denying the Respondent's motion to clarify and granting Petitioner's request to file a late return, the South Carolina Supreme Court denied certiorari on April 7, 2010.  <u>See</u> <u>Baldwin v. State</u>, Order dated April 7, 2010.  The Remittitur was sent down on April 23, 2010.  <u>See</u> Remittitur (dated April 23, 2010).

Petitioner then filed this federal habeas corpus petition, raising the following issues:

**Ground One**: [Petitioner] was not properly advised regarding plea offers made to Petitioner's attorney.

**Supporting Facts**: If I pled to (ABHAN) 10 years.  They would drop the 1st degree burglary and possession of a firearm.  I never knew about this plea.

**Ground Two:** Elements of offenses and possible sentences were not discussed.

**Supporting Facts**: The attorney did not explain or discuss any sentencing range or what I was being sentenced too.

**Ground Three:** Attorney never advised [Petitioner] of anything to do with his plea.

**Supporting Facts**: He never discussed going to trial.  He never discussed sentencing possibilities.  He never discussed any of your rights relative to a guilty plea.

**Ground Four:** Plea Attorney was without sufficient knowledge of case to represent [Petitioner].

**Supporting Facts**: When attorney showed up at court he thought the original plea was still on the table and without knowledge of this you were injured a 20 year 85% sentence.

<u>See</u> Petition, p. 6-11.



<u>**Discussion**</u>

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Fed.R.Civ.P; <u>see</u> Habeas Corpus Rules 5-7, 11. Further, while the federal court is charged with liberally construing pleadings filed by a <u>pro se</u> litigant to allow the development of a potentially meritorious case; <u>See</u> <u>Cruz v. Beto</u>, 405 U.S. 319 (1972), and <u>Haines v. Kerner</u>, 404 U.S. 519 (1972); the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. <u>Weller v. Dep't of Social Services</u>, 901 F.2d 387 (4th Cir. 1990).

Petitioner contends that his counsel was ineffective for failing and/or improperly advising him, failing to discuss the offenses and possible sentences, not properly preparing to proceed, failing to discuss prior offers, and being without sufficient knowledge of the case to represent the Petitioner. These issues were raised in Petitioner's APCR, where Petitioner had the burden of proving the allegations in his petition. <u>Butler v. State</u>, 334 S.E.2d 813, 814 (S.C. 1985), <u>cert.</u> <u>denied</u>, 474 U.S. 1094 (1986). The PCR court rejected these claims, making relevant findings of fact and conclusions of law in accordance with S.C.Code Ann. § 17-27-80 (1976), as amended. <u>See</u> <u>Baldwin v. South Carolina</u>, No. 07-CP-23-2998.

Specifically, the PCR judge found that: 1) the Petitioner was not credible in his testimony, while Petitioner's counsel was credible; 2) Petitioner's counsel adequately conferred with the Petitioner, conducted a proper investigation, and were thoroughly competent in their



representation; 3) Petitioner admitted to the plea judge that he was guilty and that the facts recited by the solicitor were true; 4) Petitioner told the plea judge that he understood the trial rights he was waiving in pleading guilty, was satisfied with counsel, and had not been coerced in any way; 5) Petitioner failed to accept the State's plea offer because he did not want to plead guilty to the ABHAN charge; 6) James discussed the offer with Petitioner in August 2005 and Singleton discussed it with Petitioner again in January 2006; 7) following Petitioner's refusal to plead guilty in January 2006, the plea offer was extended through the end of February; 8) Petitioner was involved in CDV offenses in December 2005 and January 2006 and was arrested at the courthouse when he and James appeared for a guilty plea in March 2006; 9) as the deadline to accept the plea offer had passed and Petitioner had been arrested, it is clear that the plea offer had been withdrawn well before the May 2006 plea hearing; 10) the concern expressed by the plea judge as to the delay in initially conveying the plea offer to the Petitioner was not detrimental; 11) James testified that the plea offer had been discussed with the Petitioner in August 2005; 12) Singleton testified he believed the offer had been discussed with the Petitioner in December 2005 and Petitioner admitted he knew about the offer in January 2006; 13) as the offer had been repeatedly extended, the Petitioner had several months to consider it; 14) the issues raised by Petitioner about delays in seeking discovery from the State and trial preparation are likewise not persuasive; 15) it was only after Petitioner's arrest in March 2006 that the attorneys knew the plea offer had been withdrawn; 16) when the Petitioner pled guilty in May 2006, the case was not on the trial docket;[6] 17) Singleton testified that he was prepared for the plea hearing that day and had reviewed the discovery materials, the elements, and the possible sentences

---

[6]This finding is apparently in error, as the Record reflects that the case was subject to call for trial if Petitioner had not entered a plea. (R.pp 13, 110).



before the plea;  18) the plea judge also reviewed the charges and maximum sentences with the Petitioner; 19) Petitioner knew there was no recommendation at the May 2006 plea hearing because he was advised as such by the plea judge; 20) Petitioner chose not to accept the plea offer between August 2005 and March 2006; 21) the offer was withdrawn based on Petitioner's refusal to accept it in a timely fashion and the fact that he was arrested for CDV; 22) Petitioner is, therefore, responsible for the withdrawal of the plea offer; 23) Petitioner admitted his guilt at the plea hearing and stated he wanted to plea guilty that day; 24) Petitioner also told the court he was satisfied with his attorneys' services; 25) at no point in the lengthy guilty plea hearing did Petitioner state either that he did not want to plead guilty or that he wanted to withdraw his plea; 26) Petitioner did not show that his counsel failed to render reasonably effective assistance under prevailing professional norms; 27) Petitioner failed to present specific and compelling evidence that plea counsel committed either errors or omissions in their representation of the Petitioner; 28) Petitioner did not show that he was prejudiced by his plea attorneys' performance; 29) Petitioner received a sentence well below that which he was eligible to receive; 30) while there was a recommendation from the State at one point, there is no guarantee the recommendation would have been accepted and followed by the judge; 31) as to any and all allegations that were raised in the application or at the hearing in this matter and not specifically addressed in this Order, Petitioner failed to present any evidence regarding such allegations; and 32) accordingly, Petitioner waived such allegations and failed to meet his burden of proof regarding them.  (R.pp. 162-165).

      Substantial deference is to be given to the state court's findings of fact.  Evans v. Smith, 220 F.3d 306, 311-312 (4th Cir. 2000), cert. denied, 532 U.S. 925 (2001) ["We . . . accord state court factual findings a presumption of correctness that can be rebutted only by clear and



convincing evidence], <u>cert</u>. <u>denied</u>, 532 U.S. 925 (2001); <u>Bell v. Jarvis</u>, 236 F.3d 149 (4th Cir. 2000)(en banc), <u>cert</u>. <u>denied</u>, 112 S.Ct. 74 (2001).

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1). <u>See</u> also <u>Fisher v. Lee</u>, 215 F.3d 438, 446 (4th Cir. 2000), <u>cert</u>. <u>denied</u>, 531 U.S. 1095 (2001); <u>Frye v. Lee</u>, 235 F.3d 897, 900 (4th Cir. 2000), <u>cert</u>. <u>denied</u>, 533 U.S. 960 (2001).

However, although the state court findings as to historical facts are presumed correct under 28 U.S.C. § 2254(e)(1), where the ultimate issue is a mixed question of law and fact, as is the issue of ineffective assistance of counsel, a federal court must reach an independent conclusion. <u>Strickland v. Washington</u>, 466 U.S. 668, 698 (1984); <u>Pruett v. Thompson</u>, 996 F.2d. 1560, 1568 (4th Cir. 1993), <u>cert</u>. <u>denied</u>, 114 S.Ct. 487 (1993) (citing <u>Clozza v. Murray</u>, 913 F.2d. 1092, 1100 (4th Cir. 1990), <u>cert</u>. <u>denied</u>, 499 U.S. 913 (1991)). Nevertheless, since Petitioner's ineffective assistance of counsel claims were adjudicated on the merits by the South Carolina state court, this Court's review is limited by the deferential standard of review set forth in 28 U.S.C. §2254(d), as interpreted by the Supreme Court in <u>Williams v. Taylor</u>, 120 S.Ct. 1495 (2000). <u>Bell v. Jarvis</u>, <u>supra</u>; <u>see</u> <u>also</u> <u>Evans</u>, 220 F.3d at 312 [Under § 2254(d)(1) and (2), federal habeas relief will be granted with respect to a claim adjudicated on the merits in state court proceedings only where such adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States", or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding"]. Therefore, this Court must be mindful of this deferential standard of review in considering Petitioner's ineffective assistance of counsel claims.



Where allegations of ineffective assistance of counsel are made, the question becomes "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." <u>Strickland</u>, 466 U.S. at 694. In <u>Strickland</u>, the Supreme Court articulated a two prong test to use in determining whether counsel was constitutionally ineffective. First, the Petitioner must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel's performance was below the objective standard of reasonableness guaranteed by the Sixth Amendment. Second, the Petitioner must show that counsel's deficient performance prejudiced the defense such that the Petitioner was deprived of a fair trial. Further, where a guilty plea is involved, in order to show prejudice a Defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. <u>Hill v. Lockhart</u>, 474 U.S. 52 (1985).

Here, after careful review of the record and the arguments presented, the undersigned finds and concludes for the reasons set forth hereinbelow that Petitioner has failed to meet his burden of showing that trial counsel was ineffective under this standard. <u>Smith v. North Carolina</u>, 528 F.2d 807, 809 (4th Cir. 1975) [Petitioner bears the burden of proving his allegations when seeking a writ of habeas corpus]. Therefore, this Petition is without merit and should be dismissed.

## I.

In Ground One of his Petition, Petitioner contends that he was not properly advised regarding a plea offer to drop the first degree burglary and firearm possession charges if Petitioner pled to ABHAN. However, Petitioner conceded at his PCR hearing that he met with James in August 2005, discussed the charges, and was told about the plea offer at that time, although Petitioner says he was not advised of the maximum possible sentence he could receive. (R.pp. 68-73). Petitioner



testified that he was concerned about the ABHAN charge not being dismissed as part of the plea, and asked James to see if the Solicitor would drop the burglary and ABHAN charges.  (R.pp. 71, 76).

Petitioner testified that when he met with Singleton in January 2006, he also asked Singleton to talk to the Solicitor about dismissing the gun charge and the burglary charge and allowing him to plead guilty to the remaining charges, which Singleton agreed to do.  (R.pp. 79-80).  However, Singleton testified that the Solicitor would not budge off the original offer.  (R.p. 113).

When Petitioner subsequently came to court in March, he testified that he had not heard anything from his counsel and believed the offer was still open.[7]  (R.pp. 25, 80-82).  Petitioner testified at his guilty plea that he was told when he arrived at the courthouse in March that the offer was not going to change, although counsel stated he believed he had also earlier talked to Petitioner on the phone (which Petitioner stated he did not recall).  (R.pp. 26-27).  Petitioner was then arrested while at the courthouse on some CDV charges.  (R.p. 84).  The Solicitor stated that although Petitioner was not on the trial docket when he came to court in March, the plea offer had been withdrawn by that time both because the deadline had passed *and* because the Solicitor had also learned of another previous arrest (prior to the one at the courthouse in March).[8]  (R.pp. 27-28).  Although Petitioner testified that he was never told that there was a deadline for him to accept the plea; (R.p. 94); the PCR judge found that James discussed the offer with Petitioner in August 2005, that Singleton discussed it with Petitioner again in January 2006, that Petitioner failed to accept the State's plea offer because he did not want to plead guilty to the ABHAN charge, that following the

---

[7]When Petitioner went to roll call in February, counsel was not present.  (R.pp. 80-81).

[8]Petitioner had previously been arrested for yet another CDV in late December 2005 or early January 2006, but the Solicitor did not learn of this previous arrest until March 2006.  (R.pp. 18, 27-28).



Petitioner's refusal to plead guilty in January 2006, the plea offer was extended through the end of February, and that as the offer had been repeatedly extended, the Petitioner had several months to consider it. However, Petitioner was involved in CDV offenses in December 2005 and January 2006, and the PCR judge found that it was only after Petitioner's arrest in March 2006 that his attorneys knew the plea offer was no longer on the table.

At his guilty plea, Petitioner's counsel informed the plea judge that "at the bottom (of the plea offer), it states that one of the conditions was not to get in any further trouble. And before [Petitioner] had a chance to plea that day [in March 2006], he never got the chance to go in front of the judge that day. He got arrested in the hallway." (R.p. 17). Further, the Solicitor told the Court that, although he had extended his offer several times, once he learned of Petitioner's December arrest, the plea offer was no longer open. (R.p. 18). Based on this record, it is clear that Petitioner was advised of the plea offer and that he did not accept the offer due to his wish to seek a better deal. Then, Petitioner's own subsequent conduct with regard to the CDVs resulted in the plea offer no longer being available. Hence, although counsel admit they did not tell Petitioner that there was a February 2006 deadline to accept the plea offer, the record clearly reflects that the plea would have been withdrawn anyway due to Petitioner's own conduct. Accordingly, the Petitioner has not shown that his counsel was ineffective with regard to informing him of the availability of the plea offer, or that he suffered any prejudice due to counsels' actions. This issue is without merit.

## II.

In Ground Two of his Petition, Petitioner contends that his counsel was ineffective because the elements of the offenses and possible sentences he could receive were not discussed with him. Petitioner's primary argument with regard to this issue is that he was not informed that the



burglary charge carried a minimum of fifteen (15) years imprisonment and a maximum of life.

Petitioner testified at his PCR hearing that when he pled guilty in May 2006 his counsel still had not advised him of the maximum penalties on the charges he was facing, and that he was "shocked" when the plea judge told him the maximum on the burglary charge was life. (R.pp. 72-73, 91-92, 96-98). At the PCR hearing Singleton testified that, while he could not recall specifically whether he told Petitioner what the potential sentences were or the potential range of sentence for each charge, he believed that he did and that it would have been part of his general practice to do so. (R.p. 112-113, 123). However, at Petitioner's guilty plea, Singleton advised the judge as follows:

> **The Court**: Have you explained to him the crucial elements that the State would have to prove to convict him of each of these charges, the minimum and maximum punishment that he faces and all of his constitutional rights?
>
> **Mr. Singleton:** Yeah. We spoke last night and this morning.
>
> **The Court**: So you have done all that?
>
> **Mr. Singleton:** Yes, sir.
>
> **The Court**: And before last night and this morning, have you talked to him about these things?
>
> **Mr. Singleton:** Yes. We spoke a couple of weeks before that or a month ago –
>
> **The Court**: Now, all of these things that I just asked you about, when you explained these things to him, did he understand all that?
>
> **Mr. Singleton**: I believe so, your Honor. Yes, Sir.

(R.pp. 4-5).

Hence, while Singleton's memory at the PCR hearing of what had transpired over a year and half earlier was somewhat equivocal, Singleton's statements at the actual time of the events in question

12



were quite definitive. The PCR judge found counsel's testimony credible and that Singleton had reviewed the discovery materials, the elements, and the possible sentences with Petitioner before the plea.

In any event, the plea Court also discussed the charges and possible sentences directly with the Petitioner at his plea, as follows:

> **The Court**: All right. You are charged with Burglary in the first degree. That carries a minimum of 15 years in prison and a maximum of a life sentence. You understand that?
>
> **Mr. Baldwin**: Yes, sir.
>
> **The Court**: Now, uh, Mr. Baldwin, the charge of Burglary in the first degree is classified under South Carolina law as a violent crime and as a most serious crime. Do you understand what those two classifications mean?
>
> **Mr. Baldwin**: Yes, sir.
>
> **The Court**: All right. I'm going to go over it with you. You need a minute to collect yourself?
>
> **Mr. Baldwin**: No, sir.
>
> **The Court**: I'm going to go over these two classifications with you so that I can make sure you understand what they mean. Because this crime is classified as violent and because it carries a maximum penalty of more than 20 years, you will not be eligible for parole on whatever sentence you get here today. You understand that?
>
> **Mr. Baldwin**: Yes, sir.

(R.pp. 7-8).

The Court then proceeded to discuss the remaining charges and potential sentences with the Petitioner. (R.pp. 7-10).

The PCR court found that plea counsel adequately conferred with the Petitioner, and that Petitioner failed to meet his burden of proving counsel failed to render reasonably effective



13

assistance.  <u>Smith</u>, 528 F.2d at 809 [Petitioner bears the burden of proving his allegations when seeking a writ of habeas corpus].  Further, even if this Court were to accept Petitioner's unsubstantiated assertion that counsel failed to advise him of his charges and possible sentences, he has shown no prejudice because it is clear in the record that the plea court also went over these issues prior to the acceptance of the plea, following which Petitioner admitted he had committed those acts and entered his plea of guilty.  <u>Cf.</u> <u>Pittman v. South Carolina</u>, 524 S.E.2d 623, 625 (S.C. 1999) ["A defendant's knowing and voluntary waiver of the constitutional rights which accompany a guilty plea 'may be accomplished by colloquy between the Court and the defendant, between the Court and defendant's counsel, or both."] (citing <u>State v. Ray</u>, 427 S.E.2d 171, 174 (S.C. 1993)); <u>see also</u> <u>State v. Lambert</u>, 225 S.E.2d 340 (1976)); <u>Roddy v. South Carolina</u>, 528 S.E.2d 418, 421 (S.C. 2000).  <u>See</u> <u>Sargent v. Waters</u>, 71 F.3d 158, 160 (1995)["The [United States] Supreme Court has . . . held that while 'the governing standard as to whether a plea of guilty is voluntary for purposes of the Federal Constitution is a question of federal law, and not a question of fact subject to the requirements of 28 U.S.C. § 2254(d),' the historical facts underlying such pleas are entitled to deference under the statute."](quoting <u>Marshall v. Lonberger</u>, 459 U.S. 422, 431-432 (1983)).

There is no basis in this record to overturn the findings of the State Court.  Petitioner has not provided the Court with any evidence that he did not intend to plead guilty to the charges, under oath to the presiding judge, without objection in open court.  While Petitioner contends that he only went forward with the plea after he was told about the potential sentences because counsel had told him that he could not win because of the incriminating statement he had given to the police; (R.pp. 97-98, 101); criminal defendants often make the decision to plead guilty based on a likelihood of conviction at trial, and although Petitioner now claims that his plea was involuntary based on not



14

being advised of the potential sentences and elements of the charges, "[r]epresentations of the Defendant, his lawyer and the prosecutor at [arraignment], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings...The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). Further, statements of the accused that facially demonstrate the plea's validity are conclusive absent compelling reasons why they should not be, such as ineffective assistance of counsel. Via v. Superintendent, Powhatan Correctional Center, 643 F.2d. 167, 171 (4th Cir. 1981). Petitioner has failed to show his counsel was ineffective on this claim.

In sum, Petitioner has presented no evidence to show that counsel was ineffective for failing to advise him of the offenses and possible sentence, or that his guilty plea was not freely and voluntarily entered based on his not being provided this information. Evans, 220 F.3d at 312 [Federal habeas relief will not be granted on a claim adjudicated on the merits by the state court unless it resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding]; Williams v. Taylor, 529 U.S. 362 (2000); Bell, 236 F.3d at 157-158; 28 U.S.C. § 2254(e)(1) [Determination of a factual issue by the state court shall be presumed correct unless rebutted by clear and convincing evidence]. Sargent, 71 F.3d at 160 [historical facts underlying guilty pleas are entitled to deference]. This record shows that Petitioner chose to plead guilty, and that he did so freely and voluntarily. See Boykin v. Alabama, 395 U.S. 238 (1969); Smith, 528 F.2d at 809 [Petitioner bears the burden of proving his allegations when seeking a writ of habeas corpus.]. Therefore, this issue is without merit and should be dismissed.



### III.

In Ground Three of his Petition, Petitioner contends that his counsel never advised him of "anything to do with his plea"; that his counsel never discussed going to trial, never discussed sentencing possibilities, or any of his rights relative to a guilty plea.

With respect to the issues raised in Ground Three, Petitioner's allegations concerning sentencing possibilities and the plea offer have already been discussed. <u>See</u> discussion, <u>supra</u>. With regard to the issue concerning his guilty plea and rights concerning his guilty plea, the plea judge advised him of the charges, the possible sentences, his right to a trial by jury, the right to remain silent, the presumption of his innocence, the state's burden, and the right to call witnesses. (R.p. 10). Petitioner testified that he wanted to give up those rights and proceed with his plea. (R.p. 10). Petitioner also testified that he was completely satisfied with his attorney, that his attorney had done everything in his case that he felt he should have done or could have done, and that his attorney had not done anything that Petitioner felt he should not have done. (R.pp. 12-13). Petitioner further testified that if he decided to exercise his right to trial by jury, that Singleton was prepared to defend him, he was not aware of anything that Singleton had not done that he needed to do in order to prepare for trial, and that Singleton was prepared to proceed to trial. (R.p. 14).[9]

Although Petitioner now contradicts his testimony from his guilty plea, his former representations as well as the findings by the judge accepting his plea, constitute a formidable barrier in this proceeding. <u>Blackledge</u>, 431 U.S. at 73-74. Petitioner has failed to meet his burden with

---

[9]Singleton, however, testified that he was not prepared to proceed with a trial on that day. (R.pp. 116-117). Hence, if Petitioner had declined to plead guilty and proceed to trial, and if Singleton had then performed ineffectively, Petitioner might then have had an ineffective assistance claim. However, that did not happen. In any event, Petitioner's own statements at the guilty plea reflect that he was feeling no pressure to plead guilty because he believed his counsel was unprepared.

16



respect to this issue, and it should be dismissed.

**IV.**

In Ground Four of his petition, Petitioner contends that his counsel was without sufficient knowledge to represent him because counsel thought the original plea was still on the table and did not know the possible sentence Petitioner was facing. For his part, Singleton conceded at the PCR hearing that he did not tell Petitioner that the plea offer was not still available, because he thought that it was until one of the solicitors told him otherwise outside the courtroom. (R.pp. 125, 127). Singleton stated he "messed up" and did not give Petitioner the representation that he should have gotten, and that when the plea judge told Petitioner that the burglary charge carried a maximum of life, Petitioner "fell to his knees". (R.p. 9, 119, 128).

However, as previously discussed, Petitioner would not have been eligible for the plea deal even if it had not otherwise expired, because he had been arrested for criminal conduct back in late December 2005 or early January 2006, which was a violation of the deal he had been offered. Further, Petitioner chose to proceed with his plea even after finding out that the plea offer was not still available. Petitioner admitted his guilt at the plea hearing and stated he wanted to plead guilty that day. Petitioner was fully advised of the potential sentences he was facing; see, discussion, supra; and as previously discussed, Petitioner testified that he was completely satisfied with his attorney, that his attorney had done everything in his case that he felt he should have done or could have done, and that his attorney had not done anything that Petitioner felt he should not have done. (R.pp. 12-13). The record shows that Petitioner had been advised by trial counsel, that the consequences of his plea were fully explained to him by the Court, and at no point in the lengthy guilty plea hearing did Petitioner ever state either that he did not want to plead guilty or that he wanted to withdraw his plea.



The record also clearly shows that Petitioner was given every opportunity to change his mind, and denied that he had been coerced or forced to act in any manner concerning his plea. Hence, the record shows that Petitioner chose to enter a plea of guilty, and did so freely and voluntarily. Little v. Allsbrook, 731 F.2d 238 (4th Cir. 1984); U.S. v. Futeral, 539 F.2d 329 (4th Cir. 1975); Brady v. United States, 397 U.S. 742 (1970) (pleading guilty to avoid a reasonable possibility of receiving a greater sentence does not constitute a coerced plea); Boykin v. Alabama, 395 U.S. 238 (1969).

The undersigned can find no basis in the record or the applicable caselaw to overturn the findings of the state court with regard to the adequacy of counsel's representation, or to find that the state court's rejection of this claim was unreasonable. Evans, 220 F.3d at 312 [Federal habeas relief will not be granted on a claim adjudicated on the merits by the state court unless it resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding]; Williams v. Taylor, supra. Bell, 236 F.3d at 157-158; 28 U.S.C. § 2254(e)(1) [Determination of a factual issue by the state court shall be presumed correct unless rebutted by clear and convincing evidence]; Hill, 474 U.S. 52 [Where a guilty plea is involved, in order to show prejudice a Defendant must show that there is a reasonable probability that, but for counsel's errors, he could not have pled guilty and would have insisted on going to trial]. Accordingly, Petitioner has not shown that he is entitled to relief, and this claim should be dismissed.

### Conclusion

Based on the foregoing, it is recommended that the Respondent's motion for summary judgment be **granted**, and that this petition be **dismissed**.



The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

November 12, 2010
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

